IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
**Judge Edward W. Nottingham**

Civil Action No. 04–cv–02351–EWN–OES

N. LEE LACY, an individual, and
ROARING VALLEY FORKS HOLDINGS, LLC
formerly known as TAGERT LAKES HOLDING, LLC
a Colorado limited liability company,

    Plaintiffs,

v.

OLD STANDARD LIFE INSURANCE, INC., an Idaho Corporation;
METWEST MORTGAGE SERVICES, INC., an Arizona Corporation;
METWEST MORTGAGE SERVICES, INC., a Washington Corporation; and
OLD WEST ANNUITY AND LIFE INSURANCE COMPANY, an Arizona
Corporation, and DOES 1 through 25, Inclusive,

    Defendants.

---

**ORDER AND MEMORANDUM OF DECISION**

---

This is a breach of contract case. Plaintiffs N. Lee Lacy and Roaring Valley Forks Holdings, L.L.C., allege that Defendants Old Standard Life Insurance, Inc., Metwest Mortgage Services, Inc. of Arizona, Metwest Mortgage Services, Inc. of Washington, and Old West Annuity and Life Insurance Company, (collectively "Defendants"), (1) breached the contract between them for assessing improper late fees and assessing amounts in excess of the amount permitted under the promissory notes, and (2) breached Colo. Rev. Stat. § 5–12–103 by

assessing interest and finance charges in excess of the per annum statutory limit. This matter is before the court on (1) Defendant Old Standard Life Insurance Company's ("Old Standard") "Motion to Dismiss and/or Stay," filed January 14, 2005; and (2) "Motion to Dismiss Claims Against Defendant Old West Annuity and Life Insurance Company Without Prejudice," filed February 7, 2005. Jurisdiction is based on diversity of citizenship, 28 U.S.C. § 1332.

**FACTS**

*1.      Factual Background*

The following facts are taken from Plaintiffs' complaint and the parties' submissions with respect to the relevant motions before the court. Plaintiff N. Lee Lacy ("Lacy") is a citizen of Colorado. (Compl. and Demand For Jury Trial ¶ 4 [hereinafter "Pls.' Compl."].) Plaintiff Roaring Valley Forks Holdings, L.L.C. ("Roaring Forks") is a limited liability company organized under the laws of Colorado and has its principal place of business in Colorado. (*Id.* ¶ 3.) Defendant Old Standard is a corporation organized under the laws of the State of Idaho, with it is principal place of business in Spokane, Washington. (*Id.* ¶ 5.) Defendant Old West Annuity and Life Insurance Company ("Old West") is a corporation organized under the laws of the State of Arizona with its principal place of business in California. (*Id.* ¶ 8.)

Plaintiffs secured loans through Defendants Old Standard and Old West for real property located in Colorado. (*Id.* ¶ 11.) Plaintiffs assert that when the loan "became due, [Defendant] Old Standard failed to provide the required legal notices mandated under Colorado law regarding balloon payments." (N. Lee Lacy and Roaring Fork Valley Holding LLC's Mem. of Points and Authorities in Opp'n to Old Standard Life Ins.'s Mot. To Dismiss and/or Stay at 2 [filed Feb. 3,

2005] [hereinafter "Pls.' Resp. to Def. Old Standard's Br."].) Plaintiffs contend that upon sale of the property, they paid off the loan to Defendant Old Standard in its entirety and Defendant Old Standard retained monies in excess of those it was due. (*Id.*) Further, Plaintiffs assert that Defendant Old Standard refused to reconvey the deed of trust unless Plaintiff paid the excess monies. (*Id.*) Plaintiffs assert that "Defendant [Old West] committed material breaches of its contractual obligations by assessing interest in excess of the amount permitted under the loan and improper late charges on the balloon payment." (N. Lee Lacy and Roaring Fork Valley Holding LLC's Mem. of Points and Authorities in Opp'n to Old West Annuity and Life Ins. Co.'s Mot. to Dismiss at 2 [filed Mar. 7, 2005] [hereinafter "Pls.' Resp. to Def. Old West's Receiver's Br."].)

In March 2004, the District Court of the Fourth Judicial District of the State of Idaho, entered an "Order of Rehabilitation," governing the rehabilitation of Defendant Old Standard. (Def. Old Standard's Mot. to Dismiss and/or Stay at 2 [filed Jan. 14, 2005] [hereinafter "Def. Old Standard's Br."], Ex. A [Order of Rehab. (filed Mar. 2, 2004) (hereinafter "Order of Rehab."], Ex. B [Am. Order of Rehab. (filed Dec. 14, 2004) (hereinafter "Am. Order of Rehab.")].) Pursuant to the Idaho Insurer Supervision, Rehabilitation and Liquidation Act, Chapter 33, Title 41 of the Idaho Code, the court appointed the Director for the Idaho Department of Insurance as the rehabilitator for Defendant Old Standard. (*Id.*, Ex. A ¶ 2 [Order of Rehab.].) On December 14, 2004, the court entered its amended order of rehabilitation. (*Id.*, Ex. B [Am. Order of Rehab.].) The amended order provides that:

> [a]ll persons and entities are enjoined and restrained from:

> instituting or further prosecuting any action, at law or in equity, or in other proceedings to determine, enforce, collect, or asset [sic] any claims or cause of action against [Defendant] Old Standard, the rehabilitation estate of [Defendant] Old Standard or the Rehabilitator; (2) asserting or obtaining, or attempting to assert and/or to obtain, any setoff, preference, judgment, attachment, replevin, collection of any reinsurance recoverable or account payable by [Defendant] Old Standard, or other liens or encumbrances, or making any levy or other forms of execution against [Defendant] Old Standard, the rehabilitation estate of [Defendant] Old Standard or the Rehabilitator; (3) taking any action or interfering in any way with the Rehabilitator's title, possession, and/or control of [Defendant] Old Standard and the rehabilitation estate of [Defendant] Old Standard; (4) taking any action or making any claim that may lessen or diminish the value of [Defendant] Old Standard and the [Defendant] Old Standard rehabilitation estate or prejudicing the rights of [Defendant] Old Standard's policyholders, creditors and the public; and (5) taking any action that may waste or cause waste to occur with respect to [Defendant] Old Standard and the rehabilitation of [Defendant] Old Standard.

(*Id.*, Ex. B ¶ 6 [Am. Order of Rehab.].) Further, the rehabilitation order states that "[t]he rehabilitator shall immediately consider all litigation pending outside this state and shall petition the courts having jurisdiction over that litigation for stays whenever necessary to protect the rehabilitation estate of [Defendant] Old Standard." (*Id.*, Ex. B ¶ 5 [Am. Order of Rehab.].)

Similarly, on March 2, 2004, the Superior Court of the State of Arizona entered an Order for Appointment of Receiver and Injunction and Consent Thereto, appointing the Director of Insurance as Receiver for Old West. (Mot. to Dismiss Claims Against Def. Old West Annuity and Life Ins. Co. Without Prejudice at 2 [filed Feb. 7, 2005] [hereinafter "Def. Old West's Receiver's Br."], Ex. A [Order for Appointment of Receiver and Inj. and Consent Thereto (filed Mar. 2, 2004) (hereinafter "Order for Appointment of Receiver")].) The order provides that the receiver should "[i]nstitute, prosecute, defend, compromise, intervene in, seek stays in, or become a party to, such suits, actions or proceedings at law or in equity as may, in the Receiver's

-4-

opinion, be necessary for the collection, recovery, protection, maintenance, or preservation of the property subject to this [r]eceivership." (*Id.*, Ex. A ¶ 5 [Order for Appointment of Receiver].) Pursuant to the Arizona Uniform Insurers' Liquidation Act, Ariz. Rev. Stat. § 20–614(B), the March 2, 2004, order further provided that:

> Except by leave of court, during the pendency of the Receivership, [Defendant Old West] and all customers, principals, investors, creditors, stockholders, lessors, and other persons, except for the Receiver or her agents, seeking to establish or enforce any claim, right or interest against or on behalf of [Defendant Old West], and all others acting for or on behalf of such persons including attorneys, trustees, agents . . . by and hereby are enjoined from: . . . (1) Commencing, prosecuting, continuing or enforcing any claims, suit or proceeding against [Defendant Old West] or against any of its assets for a period of 180 days from entry of this Order.

(*Id.*, Ex. A ¶ B(1) [Order for Appointment of Receiver].) On September 7, 2004, the Arizona Superior Court indefinitely continued the injunction and stay provisions of its March 2, 2004 Order. (*Id.*, Ex. B ¶ 1 [Order Re: Petition No. 11].)

2. *Procedural History*

Plaintiffs filed their complaint in this court on November 12, 2004. (Compl.) Plaintiffs asserted the following claims: (1) violation of Colo. Rev. Stat. § 5–12–103 arising out of the first loan against Defendants Old Standard, Metwest-Washington, and Metwest-Arizona, (*id.* ¶¶ 49–51); (2) violation of Colo. Rev. Stat. § 5–12–103 arising out of the second loan against Defendant Old West, Metwest-Washington, and Metwest-Arizona, (*id.* ¶¶ 52–54); (3) breach of contract arising out of the second loan against Defendants Old Standard, Metwest-Washington, and Metwest-Arizona, (*id.* ¶¶ 55–61); and (4) breach of contract arising out of the second loan against Defendants Old West, Metwest-Washington, and Metwest-Arizona. (*Id.* ¶¶ 62–68.)

On January 14, 2005, Defendant Old Standard, on behalf of itself and the Idaho Rehabilitator, filed a motion to dismiss and/or stay. (Def. Old Standard's Br.) Defendant Old Standard requests that this court abstain under the *Burford* Doctrine. (*Id.* at 5.) Alternatively, Defendant Old Standard argues that this court should give full faith and credit to the Idaho orders of Rehabilitation and dismiss the instant action in favor of the ongoing consolidated rehabilitation proceeding in Idaho. (*Id.* at 2.) On February 3, 2005, Plaintiff filed its response to Defendant Old Standard's motion to dismiss and/or stay. (Pls.' Resp. to Def. Old Standard's Br.) On February 15, 2005, Defendant Old Standard filed its reply in support of the motion to dismiss and/or stay. (Reply in Supp. of Mot. to Dismiss and/or Stay [filed Feb. 15, 2005] [hereinafter "Def. Old Standard's Reply"].) This matter is fully briefed.

On February 7, 2005, The Director of Insurance for the State of Arizona, as Receiver for Defendant Old West Annuity, filed a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). (Def. Old West's Receiver's Br.) Defendant Old West's Receiver argues that this court should abstain from considering the issues in this case under the *Burford* Doctrine. (*Id.* at 2–5.) Alternatively, Defendant Old West's Receiver asserts that this court must afford full faith and credit to the Arizona court order. (*Id.* at 5–7.) On March 7, 2005, Plaintiffs filed their response to Defendant Old West's Receiver's motion to dismiss. (Pls.' Resp. to Def. Old West's Receiver's Br.) On March 28, 2005, Defendant Old West's Receiver filed its reply in support of its motion to dismiss. (Reply in Supp. of Mot. to Dismiss Claims Against Def. Old West Annuity and Life Ins. Co. Without Prejudice [filed Mar. 28, 2005] [hereinafter "Def. Old West's Receiver's Reply"].) This matter is fully briefed.

On July 7, 2005, Plaintiffs voluntary dismissed their first and second claims for relief — violations of Colo. Rev. Stat. § 5–12–103 — against all Defendants. (Stipulation of Voluntary Dismissal of Usury Claims Fed. R. Civ. P. 41(a)(1) [filed July 7, 2005] [hereinafter "Stipulation of Voluntary Dismissal"].)

## ANALYSIS

### 1. *Standard of Review*

For the purposes of a motion to dismiss under Rule 12(b)(6), a court should only dismiss the claim "when it appears that the plaintiff can prove no set of facts in support of the claims that would entitle him to relief, accepting the well-pleaded allegations of the complaint as true and construing them in the light most favorable to the plaintiff." *Dubbs v. Head Start, Inc.*, 336 F.3d 1194, 1201 (10th Cir. 2003) (quoting *Yoder v. Honeywell, Inc.*, 104 F.3d 1215, 1224 [10th Cir.1997]). "The court's function on a Rule 12(b)(6) motion is not to weigh potential evidence that the parties might present at trial, but to assess whether the plaintiff's complaint alone is legally sufficient to state a claim for which relief may be granted." *Id.* (quoting *Sutton v. Utah State Sch. for the Deaf & Blind*, 173 F.3d 1226, 1236 [10th Cir.1999]).

Federal Rule of Civil Procedure 12(b)(1) provides that a defendant may move the court to dismiss the claim for "lack of jurisdiction over the subject matter." (2004). When a defendant challenges subject matter jurisdiction, the plaintiff must establish such jurisdiction by a preponderance of the evidence. *New Mexicans for Bill Richardson v. Gonzales*, 64 F.3d 1495, 1499 (10th Cir. 1995). Unlike a Rule 12(b)(6) motion, a motion under Rule 12(b)(1) "can include references to evidence extraneous to the complaint without converting it to a Rule 56 motion."

*Wheeler v. Hurdman*, 825 F.2d 257, 259 n.5 (10th Cir. 1987). Indeed, the court has "wide discretion to allow affidavits, documents and even a limited evidentiary hearing to resolve disputed jurisdictional facts under 12(b)(1)." *Id.*

2. ***Burford Abstention***

Defendant Old Standard and Defendant Old West's Receiver argue that this court should abstain from exercising jurisdiction in this case or dismiss this case in the face of Idaho's and Arizona's comprehensive state systems for orderly reorganization of insurance companies. (Def. Old Standard's Br. at 5; Def. Old West's Receiver's Br. at 4.)

Abstention from the exercise of federal jurisdiction is the exception, not the rule. *Moses H. Cone Hosp. v. Mercury Const. Corp.*, 460 U.S. 1, 14 (1983).

> The doctrine of abstention, under which a District Court may decline to exercise or postpone the exercise of its jurisdiction, is an extraordinary and narrow exception to the duty of a District Court to adjudicate a controversy properly before it. Abdication of the obligation to decide cases can be justified under this doctrine only in the exceptional circumstances where the order to the parties to repair to the State court would clearly serve an important countervailing interest.

*Colorado River Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976). The type of abstention most applicable in this case is the administrative abstention recognized in *Burford v. Sun Oil Co.*, 319 U.S. 315, 318 (1943). In *Burford*, "the Supreme Court held that federal courts should exercise their discretionary power to refuse to hear cases within their jurisdiction when to do so would impair the 'independence of State governments in carrying out their domestic policy.'" *Grimes v. Grown Life Ins. Co.*, 857 F.2d 699, 703 (10th Cir. 1988) (quoting *Burford*, 319 U.S. at 318).

Since the passage of the McCarran-Ferguson Act, federal courts have increasingly deferred to state receivership proceedings.  *Grimes*, 857 F.3d at 703; *Law Enforcement Ins. Co., Ltd. v. Corcoran*, 807 F.2d 38, 42–44 (2d Cir. 1988); *Levy v. Lewis*, 635 F.2d 960 (2d Cir. 1980).  As the *Grimes* court noted, "[t]he McCarran-Ferguson Act [is] relevant . . . , not because it removes diversity jurisdiction from the federal courts in insurance matters, but because it encourages the states to formulate their own systems to regulate insurers doing business in their states." *Grimes*, 857 F.3d at 703.  Thus, most federal courts have declined to exercise jurisdiction in disputes that involve complex and comprehensive state procedures adopted for insurance companies pursuant to the McCarran-Ferguson Act.  *See Corcoran v. Ardra Ins. Co., Ltd.*, 842 F.2d 31 (2d Cir.1988) (upheld remand of action brought by New York Superintendent of Insurance against reinsurers to state court); *Law Enforcement*, 807 F.2d at 42–44 (Even though federal court could make "a declaration of rights to property being administered by another [court] without "any unseemly interference on the part of the federal courts in state court proceedings," such a determination should not be "wrenched from the context in which the state court acted, the context of a unified administrative/judicial proceeding."); *Levy*, 635 F.2d at 963–66 (dismissal of federal court suit appropriate in context of state insurance liquidation proceedings); *Aims Enters., Inc. v. Muir*, 609 F.Supp. 257, 260–63 (M.D. Pa. 1985) (same); *Metropo. Life v. Board of Dirs. of Wis. Ins. Sec. Fund*, 572 F.Supp. 460, 472–73 (W.D. Wis. 1983) (same); *In Re Matter Of All-Star Ins. Corp.*, 484 F.Supp. 623, 624–26 (E.D. Wis. 1980) (Despite the existence of jurisdiction, district court remanded suit seeking a declaration of rights in asset of insurance company in liquidation.); *Mathias v. Lennon*, 474 F.Supp. 949 (S.D.N.Y.

1979) (dismissal of federal action in deference to a state liquidation proceeding); *Meicler v. Aetna Cas. & Sur. Co.*, 372 F.Supp. 509 (S.D. Tex. 1974), *aff'd*, 506 F.2d 732 (5th Cir. 1975) (same).

Here, both Idaho and Arizona have formulated comprehensive schemes for insurance regulation and liquidation. The Idaho Insurers Supervision, Rehabilitation and Liquidation Act, Idaho Code Ann. § 41–3301, was enacted in part, "to [l]essen[] the problems of interstate rehabilitation and liquidation by facilitating cooperation between states in the liquidation process, and by extending the scope of personal jurisdiction over debtors of the insurer outside this state." Idaho Code Ann. § 41–3301(4)(e). Similarly, the Arizona Uniform Insurers' Liquidation Act, Ariz. Rev. Stat. § 20–614(B), is "an integral part of Arizona's scheme for regulating insolvent insurers and ensure efficacy of Arizona's statutory provisions that detail the administrative process through which claims against the insurer are submitted to the receiver and evaluated by the receiver and the receivership court." *United States Fin. Corp. v. Warfield*, 839 F. Supp. 684, 689 (D. Ariz. 1993).

Additionally, the provisions of the acts specify the venue and jurisdiction of any proceedings against an insurer in rehabilitation or receivership. *See* Idaho Code Ann. § 41–3304; Ariz. Rev. Stat. §§ 20–611, 20–612, 20–614. The Idaho act grants the Idaho District Court for Ada County jurisdiction to "entertain, hear or determine any proceeding commenced by any other person," pursuant to the act. *See* Idaho Code Ann. § 41–3304(1), (5). Further, the Idaho act grants the court the right to issue injunctions and orders to prevent "interference with the receiver or with a proceeding under this act." *See* Idaho Code Ann. § 41–3305(1)(c). The Arizona act grants exclusive "original jurisdiction of delinquency proceedings to the superior

court." Ariz. Rev. Stat. § 20–612. Further, the Arizona act grants the court the right to issue injunctions and orders to prevent "interference with the receiver or the proceeding." Ariz. Rev. Stat. § 20–614 (B)(1). The effect of these provisions grants the respective courts a "special relationship of cooperation, technical oversight and concentrated review" with the insurance commissions in these respective states with respect to liquidating insurers. *See Grimes*, 857 F.3d at 705 (reviewing a similar statutory scheme in Oklahoma).

Even when states formulate comprehensive schemes for insurance regulation and liquidation, federal courts must evaluate a number of factors to determine whether the exercise of jurisdiction is proper: (1) whether the suit is based on a cause of action which is exclusively federal; (2) whether the suit requires the court to determine issues which are directly relevant to the liquidation proceeding or state policy in the regulation of the insurance industry; (3) whether state procedures indicate a desire to create special state forums to regulate and adjudicate; and (4) whether difficult or unusual state laws are at issue. *Grimes*, 857 at 704–05.

Here, Plaintiffs do not raise any federal questions. (Compl. ¶¶ 55–68.)[1] The remaining claims in this litigation are uniquely state law questions and federal jurisdiction is based entirely on diversity of citizenship. (*Id.*; Stipulation of Voluntary Dismissal.) Additionally, this suit requires the court to determine issues which are directly relevant to state policy in the regulation of the insurance industry. The Idaho and Arizona regulatory schemes have implemented the

---

[1] Moreover, Plaintiffs voluntarily dismissed their Colorado statutory claims. (Stipulation of Voluntary Dismissal.) Therefore, Plaintiffs' only remaining claims are for common law breach of contract.

respective states' policies of unified adjudication by requiring all claims and challenges to be centralized in the court supervising the liquidation, receivership, or rehabilitation. Indeed, that is the purpose of the injunction orders issued in the cases at bar. (*See* Def. Old Standard's Br., Ex. B ¶ 6 [Am. Order of Rehab.]; Def. Old West's Receiver's Br., Ex. A ¶ B(1) [Order for Appointment of Receiver].) While the injunctions do not bar the actions of their own force, it is "an expression of state policy." *Law Enforcement*, 807 F.2d at 44 (holding that abstention is appropriate because the state's insurance policy "serves the state's strong interest in centralizing claims against an insolvent insurer into a single forum where they can be efficiently and consistently disposed of"). Further, as stated above, both the Idaho and Arizona acts indicate a desire to create special state forums to regulate and adjudicate claims against an insurer involved in rehabilitation and receivership proceedings. *See* Idaho Code Ann. §§ 41–3304(1), 41–3305(1)(c); *see also* Ariz. Rev. Stat. §§ 20–612, 20–614 (B)(1). Finally, while a breach of contract action is not necessarily "difficult or unusual" the Idaho and Arizona statutes at issue provide complex schemes for dealing with potential creditors such as Plaintiffs. Thus, exercising jurisdiction in this case would disrupt the ability of the Idaho and Arizona state courts to devise and efficiently operate the complex statutory schemes for rehabilitation and receivership of insurance companies in those respective states. Accordingly, with respect to Defendants Old Standard and Old West, I abstain from exercising jurisdiction in this case.[2]

---

[2] Plaintiffs seek only money damages in this suit. (Compl. at 21.) When the relief sought is only legal — i.e., money damages — a federal court may invoke abstention principles only to stay the action. *Quackenbush v. Allstate Ins., Co.*, 517 U.S. 706, 721 (1996). This court may

Plaintiffs argue that this court should not abstain because "Plaintiffs' [c]omplaint for usury and breach of contract will not interfere with an ongoing state proceeding implicating important state interest. Nor are there difficult or unusual state laws at issue which will indicate a desire to create a special forum." (Pls.' Resp. to Def. Old West's Receiver's Br. at 7.) Plaintiffs' argument is misplaced. First, as discussed above, the state statutes authorizing the injunctions are an expression of state policy. As the Tenth Circuit held in *Davister Corp. v. United Republic Life Ins. Co.*, 152 F.3d 1277 (10th Cir. 1998), statutory schemes and injunctions like the ones at issue in this case involve important state policy issues. In *Davister*, the Tenth Circuit evaluated a claim brought by a seller of stock to an insurer prior to the insurer's insolvency. In holding that there were important state policy interests at issue, the court held that the Utah statute consolidating all claims against a liquidating insurer, "by its nature and express terms, was enacted to protect policyholders." *Id.* at 1281.

> The stay makes clear it is the policy of the State of Utah to consolidate in one
> forum all matters attendant to the liquidation of a domiciled insurance company .
> . . . Because the stay prevents conflicting rulings on claims, the unequal treatment
> of claimants, and the unnecessary and wasteful dissipation of the remaining funds
> of the insolvent insurer, the stay manifests a purpose of protecting
> policyholders."

*Id.* Contrary to Plaintiffs' assertion, (Pls.' Resp. to Def. Old West's Receiver's Br. at 7), the claims asserted in *Davister*, for rescission of a stock transfer agreement and a claim of right in real

---

not invoke abstention principles to dismiss or remand the action because Plaintiffs do not request any equitable relief. *Id.* at 717–22.

property, were not those of an insured or policyholder. *Davister*, 152 F.3d at 1278. Accordingly, Plaintiffs' arguments against abstention are unavailing.[3]

Further, Plaintiffs argue that "the issuance of a stay will severely and detrimentally affect Plaintiff's [sic] right to recovery." (Pls.' Resp. to Def. Old Standard's Br. at 6; Pl.'s Resp. to Def. Old West's Receiver's Br. 6–9.) Specifically, Plaintiffs assert that "Plaintiffs' low priority in distribution will result in a complete deprivation of their right to recovery [and therefore], the state of Idaho does not provide Plaintiffs with any recourse for the damages incurred as a result of Defendant[s'] breach of contract." (Pls.' Resp. to Def. Old Standard's Br. at 8.) Plaintiffs make a similar argument with respect to the Arizona statute. (Pl.'s Resp. to Def. Old West's Receiver's Br. at 4–9.) As the Tenth Circuit noted in *Davister*, Plaintiffs are not without a remedy. *Davister*, 152 F.3d at 1282. Plaintiffs can bring this matter before the liquidation courts in Idaho and Arizona. Moreover, if the stay is unfairly limiting Plaintiffs' pursuit of their rights in Colorado, or Arizona and Idaho do not provide adequate remedies to address Plaintiffs' claims, (Pls.' Resp. to Def. Old Standard's Br. at 4–6; Pls.' Resp. to Def. Old West's Receiver's Br. at 7–9), the Idaho and Arizona courts respectively can grant relief from the stay and injunctions. *See Davister*, 152 F.3d at 1282 (noting that the state court could grant relief from the stay ordered by the United States District Court).

### *3.  Conclusions*

Based on the foregoing it is therefore

---

[3]Plaintiffs do not address the abstention argument in their response to Defendant Old Standard's motion to dismiss and/or stay.

ORDERED as follows:

1. Defendant Old Standard's motion to dismiss and/or stay (# 13) is GRANTED in part and DENIED in part. Defendant Old Standard's motion is GRANTED with respect to its request for stay. Defendant Old Standard's motion is DENIED with respect to Defendant Old Standard's request that the case be dismissed.

2. Defendant Old West's Receiver's motion to dismiss (# 15) is DENIED.

3. The parties shall file a status report in this action every ninety days, commencing on November 30, 2005.

Dated this  8  day of September, 2005.

BY THE COURT:

s/Edward W. Nottingham
EDWARD W. NOTTINGHAM
United States District Judge